UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ELVIN M. MINAYA-RODRIGUEZ,

          Petitioner,

     v.                                       20-cv-98 (JLS)

WILLIAM P. BARR, in his official
capacity as United States Attorney
General,

CHAD WOLF, in his official capacity as
Acting Secretary, U.S. Department of
Homeland Security,

THOMAS FEELEY, in his official
capacity as Field Office Director,
Buffalo Field Office, U.S. Immigration
& Customs Enforcement,

JEFFREY SEARLS, in his official
capacity as Acting Assistant Field
Office Director and Administrator,
Buffalo Federal Detention Facility,

          Respondents.

_____

## **DECISION AND ORDER**

      Elvin M. Minaya-Rodriguez is a native and citizen of the Dominican Republic

and a lawful permanent resident of the United States.  He has been detained at the

Buffalo Federal Detention Facility pending removal proceedings since April 25,

2019, and petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241.

Minaya-Rodriguez is currently detained under 8 U.S.C. § 1226(c).  Section 1226(c) requires detention of aliens convicted of certain crimes pending removal proceedings and does not afford a hearing at which the alien may advocate for release.  Minaya-Rodriguez argues that Section 1226(c), as applied to him, violates his Fifth Amendment procedural due process rights because it requires continued detention pending a final removal order without a bond hearing.  He asks the Court to order the government to hold a bond hearing at which he may contest his continued detention.  If the Court grants this request, Minaya-Rodriguez asks that the Department of Homeland Security ("DHS") establish, by clear and convincing evidence, that his continued detention is necessary and justified.

As detailed below, the government's year-long detention of Minaya-Rodriguez has not violated his procedural due process rights.  Thus, the Court denies the relief Minaya-Rodriguez requests and dismisses his petition without prejudice.

## **BACKGROUND**

### I.   **Timeline of Relevant Events.**

Minaya-Rodriguez entered the United States as a non-immigrant visitor on November 6, 2010, and became a conditional lawful permanent resident on January 28, 2015.  Dkt. 1, at 7 ¶ 29.  On February 8, 2018, the conditions on his status were removed.  *Id.*  Since then, Minaya-Rodriguez has been a lawful permanent resident of the United States.  *Id.*

On September 7, 2018, Minaya-Rodriguez pled guilty to Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(12)—a felony offense involving fentanyl—in New York State Supreme Court, New York County. *See* Dkt. 1, at 7 ¶ 30; Dkt. 2, at 17[1] (Ex. D). That court sentenced Minaya-Rodriguez to serve 18 to 24 months in prison. *See* Dkt. 1, at 7 ¶ 30. A couple of weeks later, Immigration & Customs Enforcement officers interviewed Minaya-Rodriguez at Ulster Correctional Facility. *See* Dkt. 5-1, at 2 ¶ 9. The officers determined that Minaya-Rodriguez was removable from the United States because he was convicted of a controlled substance offense; accordingly, on January 18, 2019, DHS issued a Notice to Appear, charging that Minaya-Rodriguez was removable as an alien convicted of a controlled substance offense. *See* Dkt. 1, at 8 ¶ 35; Dkt. 5-1, at 2 ¶ 9. DHS lodged an immigration detainer on January 22, 2019, asking to be notified before Minaya-Rodriguez was released from state custody. *See* Dkt. 5-1, at 3 ¶ 12; Dkt. 5-2, at 3.

On March 29, 2019, Minaya-Rodriguez appeared with counsel before Immigration Judge ("IJ") Roger F. Sagerman at Ulster Immigration Court for the first hearing in his removal proceedings. *See* Dkt. 1, at 8 ¶ 36; Dkt. 2, at 23 (Ex. G). His lawyer addressed the pleadings, admitting certain allegations but denying that Minaya-Rodriguez was removable as an alien convicted of a controlled substance offense. *See* Dkt. 2, at 26 (Ex. G). His lawyer asked for 30 days to brief the issue—

---

[1] Page references to Dkt. 2 are to the pagination automatically generated by CM/ECF.

*i.e.*, that Minaya-Rodriguez was not convicted of a removable offense because New York Penal Law defined "narcotic drug" broader than federal immigration law.  *See id.* at 27-28.  The government asked for 15 days to respond.  *See id.* at 28.  IJ Sagerman adopted this briefing schedule and set the next hearing for May 15, 2019.  *See id.* at 29-30.  Minaya-Rodriguez's lawyer moved to terminate proceedings, consistent with the IJ's schedule.  *See* Dkt. 5-1, at 4 ¶ 15.

While Minaya-Rodriguez was still in state custody, on April 17, 2019, DHS determined that it would detain Minaya-Rodriguez pending a final order in his removal proceedings.  *See* Dkt. 1, at 8 ¶ 32; Dkt. 2, at 8 (Ex. B).  Minaya-Rodriguez was released from state custody into DHS custody on April 25, 2019—7.5 months into his 18 to 24 month sentence.[2]  *See* Dkt. 1, at 2, ¶ 2; *id.* at 7 ¶ 31; Dkt. 2, at 19-20 (Ex. F).  The next day, Minaya-Rodriguez acknowledged receipt of DHS's custody determination and requested IJ review.  *See* Dkt. 5-1, at 4 ¶ 17.  He withdrew this request after the IJ determined that he would be detained as a criminal alien ineligible for discretionary release.  *See id.*

IJ Joy A. Merriman[3] denied Minaya-Rodriguez's motion to terminate in a June 6, 2019 written order.  *See* Dkt. 2, at 41 (Ex. H).  On June 10, 2019, the parties

---

[2] The record does not establish whether Minaya-Rodriguez had been detained in state custody before pleading guilty.

[3] On May 21, 2019, venue changed from Ulster Immigration Court to Batavia Immigration Court, likely based on Minaya-Rodriguez's transfer from state custody to the Buffalo Federal Detention Facility in Batavia, New York.  *See* Dkt. 5-1, at 4 ¶ 18; *see also* Dkt. 1, at 8 ¶¶ 33-34 (alleging that Minaya-Rodriguez has been detained in Batavia since April 2019).

appeared before IJ Merriman.  *See* Dkt. 1, at 9 ¶ 38; Dkt. 2, at 33-34 (Ex. G).  They

discussed IJ Merriman's order, which Minaya-Rodriguez said he intended to appeal

to the Board of Immigration Appeals ("BIA").  *See* Dkt. 2, at 34-35 (Ex. G).  IJ

Merriman ordered Minaya-Rodriguez removed from the United States to the

Dominican Republic.  *See id.*; Dkt. 2, at 39 (Ex. H).  Minaya-Rodriguez appealed this

removal order on July 8, 2019.  *See* Dkt. 1, at 9 ¶ 39; Dkt. 2, at 39 (Ex. H); Dkt. 5-1,

at 5 ¶ 21.

On August 1, 2019, Minaya-Rodriguez filed a motion with the New York

State Supreme Court, Appellate Division, First Department, requesting (among

other things) an extension of time to notice an appeal of his underlying conviction.

*See* Dkt. 2, at 78 (Ex. J).  Also in August, Minaya-Rodriguez asked for, and

obtained, a three-week extension to file his brief to the BIA.  *See* Dkt. 2, at 43

(Ex. I).  He timely filed his BIA appeal brief, arguing that "narcotic drug" under

New York law is overbroad as compared to federal immigration law.  *See* Dkt. 2, at

45-63 (Ex. I).  While this BIA appeal was pending, the First Department granted

Minaya-Rodriguez's motion to extend the time to notice an appeal of his underlying

criminal conviction.  *See* Dkt. 2, at 97 (Ex. J).

On November 22, 2019, Minaya-Rodriguez renewed his motion to terminate

proceedings based on the "new facts and . . . material evidence that was not

available and could not have been discovered or presented at prior hearings before

the Immigration Court"—*i.e.*, the First Department's extension of time for him to

appeal his underlying criminal conviction.  *See* Dkt. 1, at 9 ¶ 40; Dkt. 2, at 66-67

(Ex. J).  The BIA remanded on December 6, 2019, instructing the IJ to:  (1) "address whether [Minaya-Rodriguez] has met his burden to demonstrate that there is a realistic probability that New York prosecutes anyone for criminally possessing isomers of methylfentanyl or the two prescription laxatives at issue"; and (2) "apply *Matter of J.M. Acosta*, 27 I&N Dec. 420 (BIA 2018) to determine whether [Minaya-Rodriguez]'s conviction is final for immigration purposes."  Dkt. 2, at 101-03 (Ex. K).

The parties appeared before an IJ on February 3, 2020, and Minaya-Rodriguez moved to terminate proceedings.  *See* Dkt. 5-1, at 5 ¶ 24.  The IJ scheduled another hearing for March 2, to allow the parties to brief the issues raised.  *See id.*  On March 2, the IJ denied Minaya-Rodriguez's motion but did not decide whether this denial was a final order from which Minaya-Rodriguez could appeal; instead, the IJ scheduled oral argument on the finality issue for March 11.  *See id.* at 5 ¶ 25.[4]

The parties' accounts of these events vary in detail but agree on the basic timeline set forth above.

## II.   <u>Procedural History.</u>

Minaya-Rodriguez is detained at the Buffalo Federal Detention Facility.  *See* Dkt. 1, at 9 ¶ 42; Dkt 5-1, at 5 ¶ 26.  He filed this petition, with supporting exhibits, on January 26, 2020.  Dkts. 1, 2.  The government answered the petition, and filed a memorandum and declarations in opposition, on March 9, 2020.  Dkts. 5, 6.

---

[4] The Court has no further information about the status of Minaya-Rodriguez's immigration proceedings or his appeal to the First Department.

Minaya-Rodriguez replied on April 3, 2020. Dkt. 7. His Section 1226(c) detention, which began on April 25, 2019, is now in its thirteenth month.

## ANALYSIS

## I.   Jurisdiction.

Jurisdiction over substantive challenges to final deportation, exclusion, and removal orders resides with the circuit courts; district courts lack jurisdiction over the merits of such orders. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) (holding that the REAL ID Act "eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . , which circuit courts alone can consider"). District courts can, however, review claims that pre-removal detention is unconstitutional. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003). In this way, habeas corpus review is available to persons "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3).

Minaya-Rodriguez claims that his detention is unconstitutional based on its duration. *See* Dkt. 1, at 2 ¶¶ 2, 4. Specifically, he claims that his now year-long detention under Section 1226(c) without a bond hearing violates his Fifth Amendment procedural due process rights. *See id.* at 10 ¶¶ 45-46, 18 ¶¶ 79-80. The government does not dispute the Court's jurisdiction here. *See* Dkt. 5, at 2 ¶ 1.

## II.   <u>Constitutionality of Section 1226(c).</u>[5]

Minaya-Rodriguez's detention is mandatory under 8 U.S.C. § 1226(c), which provides that the Attorney General "shall take into custody any alien who . . . is deportable by reason of having committed" certain criminal offenses—including, as relevant here, a controlled substance offense. *See* 8 U.S.C. § 1226(c)(1)(B);[6] 8 U.S.C. § 1227(A)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law . . . of a State . . .  relating to a controlled substance (as defined in section 802 of title 21) . . . is deportable.").

The Supreme Court has addressed Section 1226(c), rejecting a constitutional challenge and holding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear

---

[5] Minaya-Rodriguez concedes, for purposes of this habeas corpus proceeding, that he is detained under Section 1226(c), *see, e.g.*, Dkt. 1, at 9 ¶ 44, although he is challenging the criminal conviction underlying his detention and removal order, *see id.* at 2 ¶ 3 n.1.  Because Minaya-Rodriguez "has conceded that he is deportable for purposes of his habeas corpus challenge to § 1226(c)," the Court "decide[s] the case on that basis."  *See Demore*, 538 U.S. at 522 n.6 (deciding issue related to habeas petition as though Section 1226(c) was the basis for detention, even though habeas petitioner declared his intent to argue in later immigration proceedings that his underlying conviction did not support removal or mandatory detention under Section 1226(c)).

[6] If an alien meets these criteria, the Attorney General may order release "only if": (1) release is necessary for certain witness-protection purposes; and (2) the alien "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  8 U.S.C. § 1226(c)(2); *see also Jennings v. Rodriguez*, — U.S. — , 138 S. Ct. 830, 837-38 (2018) (explaining that "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)" and summarizing Section 1226(c)'s detention and release requirements). The Attorney General also must consider the severity of the criminal offense.  *See* 8 U.S.C. § 1226(c)(2).

for their removal hearings in large numbers, may require that persons . . . be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513.

The Court's holding in *Demore* aligns with its prior recognition that "the responsibility for regulating the relationship between the United States and [its] alien visitors [is] committed to the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976).  Indeed, "over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (internal quotations and citations omitted).  Because decisions regarding immigration "may implicate [the United States'] relations with foreign powers, and [because] a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently . . . more appropriate [for] either the Legislature or the Executive than [for] the Judiciary." *Diaz*, 426 U.S. at 81.  And, in *Demore*, the Court reiterated that, "in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Diaz*, 426 U.S. at 79-80) (internal quotations omitted).

Against this backdrop, courts routinely review constitutional challenges to Section 1226(c) detention.  A lawful permanent resident detained under Section 1226(c), like Minaya-Rodriguez, "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified"—such as if there were "an unreasonable delay

by the [government] in pursuing and completing deportation proceedings." *See Demore*, 538 U.S. at 532 (Kennedy, J., concurring) (citations omitted); *see also Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011) ("[C]ourts reviewing petitions for writ of habeas corpus must exercise their independent judgment as to what is reasonable."), *abrogated on other grounds*, *Jennings*, — U.S. —, 138 S. Ct. 830 (2018); *Garcia v. Whitaker*, No. 18-cv-6836, 2019 WL 3802536, at *8 (W.D.N.Y. Aug. 13, 2019) ("*Jennings* left open the possibility that individual detentions without bond hearings might eventually violate due process."). In this endeavor, however, courts must employ "a narrow standard of review of decisions made by the Congress or the President" and must exercise "the greatest caution" in evaluating constitutional claims that implicate those decisions. *See Diaz*, 426 U.S. at 81-82.

In sum, the Court must decide whether Section 1226(c), as applied here, violates Minaya-Rodriguez's Fifth Amendment procedural due process rights.

## III.  <u>Evaluating Section 1226(c) Procedural Due Process Claims.</u>

It is beyond dispute that "[t]he Fifth Amendment . . . , protects [aliens present in the United States] from deprivation of life, liberty, or property without due process of law." *See Diaz*, 426 U.S. at 77; *see also Flores*, 507 U.S. at 306 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Equally clear are the "constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

And when a petitioner raises a procedural due process challenge to his or her detention pending immigration proceedings, courts do "not consider what the substantive outcome of the case should be—*i.e.*, whether the petitioner should be released." *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 794 (W.D.N.Y. 2019). Instead, they "consider[] whether the petitioner is entitled to some sort of process, such as a bond hearing." *Id.*

## A.    The Two-Step Inquiry.

Since *Jennings*, the Second Circuit "has not addressed . . . the standard to be utilized by courts in addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context." *Ranchinskiy*, 422 F. Supp. 3d at 796-97.  Absent such guidance, this Court adopts the "case-by-case approach" used by "the overwhelming majority of district courts within this Circuit," which, in its first step, considers whether the petitioner's "length of detention has become unreasonable or unjustified." *See id.* at 797; *Garcia*, 2019 WL 3802536, at *8 ("Since *Jennings* called into question whether due process requires a six-month bright-line limitation on the detention of aliens under § 1226(c), district courts in this Circuit and other circuits have applied a 'fact-based analysis' to determine whether mandatory detention under Section 1226(c) has become unreasonable." (citation omitted)); *see also Diop*, 656 F.3d at 233 (holding that analysis of Section 1226(c) procedural due process claims "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances").

Under this fact-based analysis, courts have considered factors such as:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Ranchinskiy*, 422 F. Supp. 3d at 797; *see also Garcia*, 2019 WL 3802536, at *8 (examining factors considered in *Sajous v. Decker*, No. 18-cv-2447, 2018 WL 2357266, at *10-*11 (S.D.N.Y. May 23, 2018), and other cases).  If this analysis reveals that the detention is not unreasonably prolonged, there is no procedural due process violation, and the analysis ends.  *See Kabba v. Barr*, 403 F. Supp. 3d 180, 185 (W.D.N.Y. 2019).

If, however, the Court concludes that the alien's detention is unreasonably prolonged, its next step considers what process the petitioner is due—*i.e.*, whether the government has "provided the procedural safeguards required by the Due Process Clause."  *See Kabba*, 403 F. Supp. 3d at 185.  To determine the safeguards necessary to ensure that a petitioner receives "the opportunity to be heard at a meaningful time and in a meaningful manner," the Court considers: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, plus the likely value, if any, of other procedural safeguards; and (3) the government's interest, including the function at issue and the burden that any other procedural requirement would

impose.  *See Eldridge*, 424 U.S. at 333, 335 (internal quotations and citation omitted); *see also Kabba*, 403 F. Supp. 3d at 188 (citing *Eldridge* factors at "the second step of the two-part inquiry—the process constitutionally due to [petitioner]").  At that point, the Court considers which party bears the burden at a bond hearing, the standard by which that burden is assessed, and the factors, if any, that the government must consider. *See Kabba*, 403 F. Supp. 3d at 190; *see also Ranchinskiy*, 422 F. Supp. 3d at 800-01 (discussing requirements for bond hearings under Section 1226(c)).

## B.     Guideposts Relevant to the Reasonableness of Section 1226(c) Detention.

Because the inquiry at step one of the procedural due process analysis is fact- and case-specific, decisions addressing Section 1226(c) due process challenges in similar circumstances reveal certain helpful guideposts.

For example, procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct.  *Compare Demore*, 538 U.S. at 530-31 (detention for 6 months did not violate Fifth Amendment), *and Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) (denying bond hearing where petitioner was detained for "just over a year" and "delay was not the result of any apparent inaction or unreasonable delay on the part of the Government"), *with Hernandez v. Decker*, No. 18-cv-5026, 2018 WL 3579108, at *2, *8, *10 (S.D.N.Y. July 25, 2018) (granting

bond hearing where petitioner was detained "just over nine months," petitioner "attempted to speed things along" but waited more than a month for an initial appearance, and the IJ sua sponte adjourned a merits hearing for two months), *and Sajous*, 2018 WL 2357266, at *1, *11 (granting bond hearing where petitioner was detained for "over eight months" and delay in removal proceedings was "largely attributable to immigration officials' failure to process and send [Petitioner]'s A-file to his counsel").

Generally, petitions based on 15 to 21 months' detention are denied where some reasonableness factors favor the petitioner, some factors favor the government, and neither party bears greater responsibility for delay in removal proceedings. *See, e.g.*, *Garcia*, 2019 WL 3802536, at *8-*9 (denying bond hearing where petitioner was detained for 17 months, there was "no evidence that the proceedings [were] prolonged by dilatory tactics on the part of the Government, and "neither party [was] at fault for any delay, which appear[ed] largely due to the burgeoning case docket of the Immigration Court in Batavia");[7] *Lway Mu v. Whitaker*, No. 18-cv-6924, 2019 WL 2373883, at *4 (W.D.N.Y. June 4, 2019)

---

[7] In this district, courts' analyses of the delay factor have diverged if delays in removal proceedings result from a backlog in Batavia's Immigration Court. *See Kabba*, 403 F. Supp. 3d at 187 n.6 (granting bond hearing where petitioner was detained for more than 18 months, noting that "to the extent that there is a backlog, responsibility for its impact falls on the government" and that "if there is a burgeoning case docket at the Batavia Immigration Court, that is a problem caused by Congress, the executive branch, or both . . . [b]ut it is certainly not a problem caused by detained aliens"). This Court agrees with the *Garcia* court's view and attributes responsibility for docket-based delays to neither party. *See Garcia*, 2019 WL 3802536, at *9.

(denying bond hearing where petitioner was detained for 19 months, some delays were "attributable to strategic decisions by [petitioner] and his attorney, other delays did not result from petitioner's litigation strategy, and there was "no evidence . . that the government ha[d] unreasonably prolonged [petitioner]'s removal proceedings); *Sigal v. Searls*, No. 18-cv-389, 2018 WL 5831326, at *6, *7 (W.D.N.Y. Nov. 7, 2018) (denying petition where petitioner was detained "for more than 16 months," noting that "courts in this Circuit considering *habeas corpus* claims related to § 1226(c) have found that delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country" (internal quotations and citations omitted)); *Thompson v. Lynch*, No. 16-cv-6608, 2017 WL 344970, at *6 (W.D.N.Y. Jan. 24, 2017) (denying bond hearing where detention reached 21 months, noting that "petitioner's removal ha[d] been delayed by his own actions in pursuit of relief in the federal courts," so "neither his detention . . . nor its duration" established a due process violation); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 408-09 (S.D.N.Y. 2013) (denying bond hearing where petitioner was detained for 15 months, noting that petitioner remained in custody solely because he "chose to appeal the IJ's removal order," as he was entitled to, and that "delay caused by his actions [did] not make continued detention unreasonable or unjustified" (internal quotations and citations omitted)); *Johnson v. Phillips*, No. 10-cv-480, 2010 WL 6512350, at *6-*7 (W.D.N.Y. Dec. 20, 2010) (recommending denying bond hearing where petitioner was detained for 17 months, the record did "not indicate

any delay or foot dragging by the Government," and the "only significant delay" was the roughly 9 months petitioner's appeal was pending with the BIA), *recommendation adopted*, 2011 WL 1465448 (W.D.N.Y. Apr. 18, 2011); *Adler v. U.S. Dep't of Homeland Sec.*, No. 09-cv-4093, 2009 WL 3029328, at *1-*2 (S.D.N.Y. Sept. 22, 2009) (denying bond hearing where petitioner was detained for over 15 months, recognizing that detention was "more than twice as long as the maximum duration contemplated by the *Demore* Court" but noting there was "no evidence in the record that the government ha[d] dragged its feet"). *But see Ranchinskiy*, 422 F. Supp. 3d at 798-800 (granting petition where detention reached 21 months, some delay was attributable each party, and "on balance and particularly in view of the length of the detention and the circumstances surrounding that detention, . . . continued detention without a bond hearing [was] constitutionally unjustified"); *Vallejo v. Decker*, No. 18-cv-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (granting bond hearing where petitioner was detained for "almost seventeen months" without a hearing, principally because the government was responsible for delays in removal proceedings that had "no constitutionally acceptable reason").

When detention exceeds 24 months, the petitioner generally prevails if some reasonableness factors favor the petitioner and some favor the government. *See, e.g.*, *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 470, 477 (3d Cir. 2015) (granting bond hearing where petitioner was detained for 34 months and "neither the Government nor [petitioner] caused any extraordinary delays" and the parties "act[ed] in good faith"), *abrogated on other grounds*, *Guerrero-Sanchez v.*

*Warden York Cnty. Prison*, 905 F.3d 208 (3d Cir. 2018); *Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 266, 270-71 (3d Cir. 2012) (granting bond hearing where petitioner was detained for almost 48 months and delay resulted from a combination of government conduct and petitioner's successful efforts to contest removal); *Constant v. Barr*, 409 F. Supp. 3d 159, 163, 169 (W.D.N.Y. 2019) (granting bond hearing where petitioner was detained for 25 months and "the record [did] not show that Petitioner was engaging in bad faith delay tactics").

Petitioners detained for more than 24 months may not prevail if they employ a litigation strategy that can be viewed as dilatory or unusual compared to similarly situated detainees. *See, e.g.*, *Dor v. Dist. Dir., I.N.S.*, 891 F.2d 997, 999, 1003 (2d Cir. 1989) (holding that no procedural due process violation existed where petitioner was detained for 60 months because "his sustained detention" resulted from "the simple fact that—at his urgent request and by [a] stay—[the court] allowed his application to be exhaustively adjudicated" by the government"); *Manley v. Delmonte*, No. 17-cv-953, 2018 WL 2155890, at *1-*2 (W.D.N.Y. May 9, 2018) (denying petition where detention exceeded 24 months, petitioner asked the Second Circuit to defer consideration of his immigration appeal until a state appeal of his criminal conviction concluded, and noting that most delays were at petitioner or his attorney's request); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 190, 199 (W.D.N.Y. 2010) (denying bond hearing where petitioner was detained for "approximately 39 months" and filed an untimely appeal to the Second Circuit).

These guideposts, though not dispositive, inform the Court's analysis of Minaya-Rodriguez's request for a bond hearing here.

## IV.   <u>Minaya-Rodriguez's Detention Comports with the Fifth Amendment.</u>

Minaya-Rodriguez challenges his continued detention on procedural due process grounds, arguing that his now year-long detention is unreasonable and that the government must provide him a bond hearing.  Considered against the factors identified above, on these facts, his challenge lacks merit.  *See* Section III.A, *supra*; *Ranchinskiy*, 422 F. Supp. 3d at 797 (discussing reasonableness factors).

First, the Court considers the length of Minaya-Rodriguez's immigration detention.  Minaya-Rodriguez had been in DHS custody for nine months when he filed his petition, *see* Dkt. 1, at 3 ¶ 6, and has now been in DHS custody for a little over twelve months, *see id.* at 7 ¶ 31.  The Court recognizes that detention of "longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months."  *See Sajous*, 2018 WL 2357266, at *10.  But the length of detention "is not to be considered in isolation."  *See Garcia*, 2019 WL 3802536, at *10; *see also Dryden*, 321 F. Supp. 3d at 502 (holding that it was "insufficient that Petitioner's detention ha[d] merely become suspect by reaching this six month to a year threshold," and that petitioner "must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause").  Nor does the length of detention here stand out against the guideposts discussed above.

As it must, the Court considers the other factors, as well.  *See Phillips*, 2010 WL 6512350, at *7 ("The Supreme Court in *Demore* noted the average time for conducting a removal proceeding (including appeal), but it did not set the outer limit for how long an alien may be detained while awaiting determination of his or her removal proceeding." (citation omitted)); *Orsino*, 942 F. Supp. 2d at 409 (noting that "the Supreme Court did not set a bright-line outer limit for what constitutes a permissible period of detention" and that courts "must assess the duration of the detention in proper context").

Also relevant on this point is the length of Minaya-Rodriguez's detention in DHS custody compared to the time he spent in state custody for the underlying criminal offense.  Minaya-Rodriguez spent approximately 7.5 months in state custody, from the date he pled guilty to the date he was transferred to DHS custody. *See* Background, Section I, *supra*.  He therefore has been in DHS custody longer than he was in state custody for the underlying offense.  But Minaya-Rodriguez's 12 months in DHS custody is less than the criminal sentence he received.[8]  This comparison moderates the length of immigration detention factor.  *See Garcia*, 2019 WL 3802536, at *8 (noting that 17-month immigration detention weighed in petitioner's favor but fact that 17 months was less than criminal detention favored the government).

---

[8] The sentence Minaya-Rodriguez received also is relevant to another factor: the nature of the underlying offense.  Minaya-Rodriguez was convicted of a drug offense involving fentanyl.  On this overall record, the Court does not give much weight to this factor because the record lacks detail about the conduct supporting the conviction and because Minaya-Rodriguez is appealing this conviction.

Next, the Court considers which party—if any—is responsible for the delay in Minaya-Rodriguez's removal proceedings.  This factor may become dispositive if dilatory, bad-faith conduct by the government or delay-motivated litigation strategy by the petitioner exists.  Neither exists here.  The government commenced removal proceedings while Minaya-Rodriguez was still in state custody, *see* Dkt. 5-1, at 2 ¶ 9, and generally has not delayed removal proceedings, *see* Background, Section I, *supra*.  Minaya-Rodriguez does not argue otherwise.  And Minaya-Rodriguez has contested his removal in two venues—his immigration proceedings and his underlying criminal case—with some success.[9]  *See* Background, Section I, *supra*.  But he has not pursued this relief in bad faith, and the Court does not attribute the resulting delay to him.  Accordingly, neither party is responsible for any delay here, and this factor is neutral.  *See Garcia*, 2019 WL 3802536, at *9.

Finally, the Court considers whether Minaya-Rodriguez's detention is near conclusion.[10]  To the Court's knowledge, Minaya-Rodriguez's immigration case is still pending before the IJ, and his criminal appeal is still pending at the First Department.  There appears to be a question about whether Minaya-Rodriguez may

---

[9] The Court notes that this fact also bears on another factor—Minaya-Rodriguez's defenses to removal—and demonstrates that he has asserted defenses.  This factor favors Minaya-Rodriguez.

[10] The Court recognizes that there is another factor:  whether the immigration detention facility is meaningfully different from an institution for criminal detention.  The government provided a declaration explaining how the Buffalo Federal Detention Facility is different from a prison, and Minaya-Rodriguez explained that individuals detained under Section 1226(c), like he is, may not take full advantage of these distinctions.  This factor does not alter the Court's analysis.

appeal the IJ's most recent adverse decision to the BIA.  For purposes of this analysis, the Court will assume that Minaya-Rodriguez can appeal to the BIA and that such an appeal would extend his time in DHS custody.  On the other hand, the record does not indicate that Minaya-Rodriguez's  "continued detention will last indefinitely or that his ultimate removal is unlikely," and "if . . . a final order of removal is entered against him, there do not appear to be any institutional or other barriers to his deportation."  *See Lway Mu*, 2019 WL 2373883, at *5.  Even if this factor favored Minaya-Rodriguez, the harm that would result if detention continued for an unreasonable amount of time is mitigated by the opportunity to file a new petition if the facts meaningfully change.

On balance, Minaya-Rodriguez's detention without a bond hearing comports with the Fifth Amendment.  The duration of his detention is neither exceptional nor unreasonable.  Neither party bears responsibility for the length of removal proceedings, and time spent in DHS custody is within the range of Minaya-Rodriguez's sentence for the underlying criminal offense.  Under these circumstances, this Court concludes—as have others on similar facts[11]—that Minaya-Rodriguez's continued detention without a bond hearing does not violate procedural due process.  Because Minaya-Rodriguez's detention is not unreasonable

---

[11] The Court has considered where Minaya-Rodriguez's detention falls among the guideposts discussed above.  *See* Section III.B, *supra*.  That consideration supplements—but does not replace—the Court's consideration of the other relevant factors.

and he is not due any process at this time, the Court does not decide what process might be due.[12]

## **CONCLUSION**

For these reasons, the relief requested in Minaya-Rodriguez's petition for a writ of habeas corpus is denied.  His petition is dismissed without prejudice to filing a new petition in the future based on new and different facts, consistent with the analysis above.  The Clerk of Court is directed to close this case.

SO ORDERED.


Dated:        May 10, 2020
              Buffalo, New York


                                  s/John L. Sinatra, Jr.
                                 JOHN L. SINATRA, JR.
                                 UNITED STATES DISTRICT JUDGE

---

[12] The Court also declines to decide which respondents are proper parties.  *See* Dkt. 6, at 2 n.1.